FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

00 FEB -7  AM 8: 40

U.S. DISTRICT COURT
N.D. OF ALABAMA

HANOVER INSURANCE COMPANY,          )
                                    )
        Plaintiff,                  )
                                    )
vs.                                 ) Civil Action No. CV-99-S-313-NE
                                    )
WALKER BUILDERS, INC., and          )
SANDRA JEAN CRIDER, as              )      ENTERED
personal representative of          )
the estate of Voyt Andrew           )      FEB - 7 2000
Barnett, deceased,                  )
                                    )
        Defendants.                 )

## MEMORANDUM OPINION

This action is before the court on two motions filed by

plaintiff Hanover Insurance Company ("Hanover"). Upon consider-

ation of the motions, briefs, evidentiary submissions, pleadings,

and oral arguments of counsel, this court finds that Hanover's

motion for summary judgment is due to be granted, and its motion

for stay is due to be denied as moot.

## I. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) provides, in relevant

part, that summary judgment not only is proper, but "shall be

rendered forthwith if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to judgment as

a matter of law." The movant bears the initial burden of showing the court, by reference to materials on file, that no genuine issues of material fact exist to be decided at trial. *See generally Celotex Corporation v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). The movant discharges this burden by showing the court there is an absence of evidence to support the non-movant's case. *See Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (*per curiam*). Rule 56 permits the movant to discharge this burden with or without supporting affidavits. *See Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. When the moving party has discharged its burden, the non-movant must go beyond the pleadings and designate specific facts showing there is a genuine issue for trial. *See Jeffery*, 64 F.3d at 593.

In deciding whether the movant has met its burden, the court is obligated to draw all inferences from the evidence presented in the light most favorable to the non-movant and, also, to resolve all reasonable doubts in that party's favor. *See generally Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Inferences in favor of the non-movant are not unqualified, however. "Mere general allegations which do not reveal detailed and precise facts will not

2

prevent the award of summary judgment." *Resolution Trust Corporation v. Dunmar Corporation*, 43 F.3d 587, 592 (11th Cir. 1995) (citation omitted). Moreover, evidence that is merely colorable, *see Brown v. City of Clewiston*, 848 F.2d 1534, 1537 (11th Cir. 1988), conclusory, *see Peppers v. Coates*, 887 F.2d 1493, 1498 (11th Cir. 1989), or conjectural, does not create a genuine issue of material fact.

Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment. *See Augusta Iron & Steel Works v. Employers Insurance of Wausau*, 835 F.2d 855, 856 (11th Cir. 1988). A "genuine" dispute about a material fact exists if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Jeffery*, 64 F.3d at 594 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). The bottom line is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52, 106 S.Ct. at 2512.

3

With the foregoing standards in mind, the following facts either are not disputed, or are stated in a light most favorable to defendants.

## II. FACTUAL BACKGROUND

Hanover provided commercial liability insurance coverage to defendant Walker Builders, Inc. ("Walker Builders") from August 1, 1996, to August 1, 1997. Walker Builders, located in Baileyton, Alabama,[1] sells building materials. Alan Walker, the manager of Walker Builders, was custodian of Hanover's policy.

Felton Henry White purchased six steel drainage pipes from Walker Builders on April 21, 1997. Each pipe was 20 feet long by 18 inches in diameter. Although Walker Builders asserts it had no contractual obligation to assist White in loading the pipes onto a four-wheel trailer hitched to his pickup truck, its employees nevertheless did so. According to James Kayler, one of the employees who assisted in loading the pipes, White disregarded Kayler's warnings that the load would not be balanced if all six pipes were hauled at once. White was insistent that all six pipes be loaded onto his trailer. Kayler followed White's orders, but again put him on notice that the load was unbalanced. White again

---

[1] Walker Builders, Inc., is now known as Walker Brothers, Ltd. Walker Brothers, Ltd. was formally established on January 1, 1998.

4

disregarded Kayler's warning, and departed the premises.[2]

About ten miles down the road, three of the six pipes rolled off White's trailer. Renae Morrow, a resident of Baileyton, noticed White's predicament and telephoned Walker Builders. She told some employee there that White had lost a portion of his load and required assistance. A Walker Builders work crew happened to be about a mile from White at the time, unloading bricks at a nearby subdivision. That crew was directed to assist White. Initially, the crew members offered to transport the pipes for White. He refused, saying he could haul the pipes if the crew would reload them and "and tie them down."[3] Again, Walker Builders

_____

[2] Kayler later recounted those events in a written statement given to the City of Cullman police department:

> I was given the load ticket to load "6" 18" x 20' drive tile 'steel' on the customer trailer. I loaded three "3" tile on the trailer and told the customer I thought that was all that should be loaded. He "the customer" said that he wanted all "6" six loaded. I permided [sic] the balance of the drive tile "3" and asked if I could help him tie them down and did so with what he had. I took black tape and attached a red flag to the tile and then tied string also to hold the flag. I said that the load was not balanced. He "the customer" got in his truck and left.

Alan Walker deposition Exhibit 6, at unnumbered page 5. See also id. at unnumbered page 7 (written statement given by Walker Builders employee Ron Foust to the City of Cullman Police Department) ("I stated to [White] that 6 pipes were to[o] much to haul[,] could he make two trips, in return he said he wanted them loaded, at that time I told him to turn around and pull to the loading area and Jim Kayler would load him.").

[3] Id. at unnumbered page 1 (written statement given by crew member John Fincher to the City of Cullman Police Department). See also id. at unnumbered page 2 (written statement given by crew member Wade Redding to the City of Cullman Police Department) ("I tried to get him to make two trips. ... In my opinion, [White] was too old and strongheaded to argue with. ... He wanted [the

5

asserts that its employees were under no contractual obligation to assist White — the transaction between Walker Builders and White was complete at the time of sale.

Once the pipes were reloaded, White proceeded on his way. He traveled approximately six more miles, at which point he lost control of his truck and tow. He collided with an oncoming automobile driven by Voyt Andrew Barnett. Barnett was fatally injured. White also suffered critical injuries and eventually died. A police report described the incident as follows:

> Vehicle #1 [White's truck] after entering the bridge and due to load being unbalanced lost control of his vehicle & trailer entered the south bound side of Hwy. 157, then entered the north bound lane, the trailer of Vehicle #1 struck guard rail causing the truck to travel at approx[imately] a 45 [degree] angle toward south bound lane striking Vehicle #2 [Barnett's automobile].[4]

Alan Walker, who was informed of the wreck on the day it occurred, did not notify Hanover.

A few days later, Sergeant Terry Brooks of the City of Cullman Police Department questioned Walker Builders' employees, particularly those who had assisted White with the purchase, loading, and reloading of the pipes. Although Alan Walker did not talk with Sergeant Brooks directly, he was told by employees that

---

pipes] tied on securely and we did that.").

[4] *Id.* at Exhibit 4.

6

the police officer questioned them about the physical condition that Mr. White was in on April 21, 1997. I understood from my employees that the officer wanted to know if Mr. White seemed to have been drinking anything. From these conversations, I believed that the officer may be conducting some type of investigation on the wreck, and in particular whether Mr. White was intoxicated. [5]

Alan Walker did not notify Hanover of Sergeant Brooks' visit to the Walker Builders facility. Moreover, Alan Walker had no occasion to come into contact with other individuals investigating the accident or representatives of White or Barnett.

Some nineteen months later, on November 25, 1998, Sandra Jean Crider, as personal representative of Barnett's estate, sued Walker Builders and a number of fictitious parties in the Circuit Court of Cullman County, Alabama. Crider originally alleged that negligent loading and reloading of pipes onto White's trailer by Walker Builders' employees contributed to the death of Barnett.[6] Crider amended her complaint to include two additional claims on August 13, 1999. She alleged that Walker Builders was negligent in selling the pipes to White, because it knew they "were going to be transported on a trailer that was too short to haul [them] safely," and, because White "was in a visibly intoxicated condition."

---

[5] Alan Walker affidavit ¶ 3.

[6] Count Two of the complaint sought to hold liable a number of fictitious parties for wrongful conduct in connection with White's accident. Because Count Two does not implicate Walker Builders, it is irrelevant to the court's analysis in this action.

7

Walker Builders was served on December 3, 1998. Its attorney, by letter dated December 11, 1998, requested that Hanover provide a defense pursuant to the policy. Hanover responded by filing this declaratory judgment action on February 11, 1999, seeking a declaration that it "has no duties or obligations to defend or indemnify Defendant Walker Builders, Inc. or [to] pay any judgment that may be rendered ... in the underlying lawsuit."

### III. DISCUSSION

This is a diversity action. The court thus must apply the substantive law of the State of Alabama. *See generally Erie Railroad Company v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

Hanover contends it has no duty to defend or indemnify Walker Builders for two independent reasons. First, it claims Walker Builders failed to provide timely notice of the events that culminated in the filing of Crider's lawsuit, a condition precedent to enforcement of the policy. Second, Hanover contends the "Products — completed operations hazard" exclusion applies to Crider's claims.

### A. Notice

Hanover argues that Walker Builders' nineteen-month delay in providing notice of White's accident precludes coverage. It

8

focuses on Section IV of the policy, entitled "Commercial General
Liability Conditions." Part two of that section provides in
relevant part:

2. **Duties In The Event Of Occurrence, Offense, Claim Or
   Suit.**

   a. <u>You must see to it that we are notified as soon
      as practicable of an "occurrence" [7] or an
      offense which may result in a claim.</u> To the
      extent possible, notice should include:

      (1) How, when and where the "occurrence" or
          offense took place;

      (2) The names and addresses of any injured
          persons and witnesses; and

      (3) The nature and location of any injury or
          damage arising out of the occurrence or
          offense. [8]

Walker Builders responds that notice was provided "as soon as
practicable," since it had no reason to suspect it would be sued by
Barnett's estate.

In *Pan American Fire & Casualty Company v. DeKalb-Cherokee
Counties Gas District*, 266 So. 2d 763 (Ala. 1972), the Alabama
Supreme Court held that policy provisions requiring

   prompt or immediate notice, or that notice must be given
   "immediately," "at once," "forthwith," "as soon as

---

[7] An "occurrence" is an "accident, including continuous or repeated
exposure to substantially the same general harmful conditions." (Complaint at
Exhibit "B," page 8.)

[8] *Id.* at 6.

9

practicable," or "as soon as possible," generally mean[]
that the notice must be given within a reasonable time
under the circumstances of the case. The exact
phraseology used apparently makes very little, or any,
difference, and it is well settled that none of these
expressions require an instantaneous notice, but rather
call for notice to be given within reasonable dispatch
and within reasonable time in view of all the facts and
circumstances of each particular case. In determining
the reasonableness of a delay in giving the required
notice, the facts and circumstances of each particular
case must be considered.

*Id.* at 771. A court applying Alabama law may consider only two
factors in assessing the reasonableness of a delay in providing
notice to an insurer: the length of, and reasons for, the delay.
*See Pennsylvania National Mutual Casualty Insurance Company v.
Colyer-Lloyd, Inc.*, 1994 WL 927423, at *2 (N.D. Ala. Dec. 2, 1994)
(Acker, J.) ("If the insured does not notify the insurer in a
timely fashion and the insured fails to show mitigating
circumstances that reasonably justify the lengthy delay, the court
must hold as a matter of law that the notice provision has been
breached and grant summary judgment in favor of the insurer.");
*Southern Guaranty Insurance Company v. Thomas*, 334 So. 2d 879, 883
(Ala. 1976) (focusing on the length of, and reasons for, delay, and
determining that "whether the insurer was prejudiced by the delay
is immaterial to a determination of the reasonableness of the
delay").

10

The Alabama Supreme Court distinguished situations where the reasonableness of delay should be decided as a matter of law from those which should be determined as a matter of fact in *Southern Guaranty Insurance Company*, saying:

> Where facts are disputed or where conflicting inferences may reasonably be drawn from the evidence, the question of the reasonableness of a delay in giving notice is a question of fact for the jury. ... [On the other hand,] "where the facts are undisputed and only one conclusion is reasonably possible, the question whether or not the insured under a liability policy complied with the requirement of notice is a question of law for the court ...."

*Id.* at 882-83 (quoting *Lennon v. American Farmers Mutual Insurance Company*, 118 A.2d 500, 503 (Md. 1955)).

Here, the underlying facts are not disputed. Thus, the question becomes whether that evidence, viewed in a light most favorable to Walker Builders, establishes "mitigating circumstances that reasonably justify the lengthy delay." *Pennsylvania National Mutual Casualty Insurance*, 1994 WL 927423 at *2. If "conflicting inferences may reasonably be drawn from the evidence" on the issue of whether Walker Builders provided notice "as soon as practicable," summary judgment must be denied. *Southern Guaranty Insurance Company*, 334 So. 2d at 882.

If this court were writing on a clean slate, it would find

11

Walker Builders' delay unjustified as a matter of law.   Its reliance on what it allegedly perceived as the focus of Sergeant Brooks' investigation (*i.e.*, whether White was intoxicated), along with the failure of other investigators or representatives of Barnett's estate to contact it before the filing of suit, is misplaced.   Rather, the key facts here center on the recognition by Walker Builders' employees, on two separate occasions, that White's load was too heavy for his trailer, and, dangerously unbalanced.   *See supra* pages 4-6.   Such recognition is imputed to Walker Builders*.   See Alabama Power Company v. McIntosh*, 122 So. 677, 681 (Ala. 1929) ("A corporation, acting through many agents, and having a wide range of activity, must be charged with the knowledge of each of its agents acting within the line and scope of his employment.").   Even though Walker Builders asserts that its employees had no contractual obligation to assist White, it has not claimed that its employees were acting outside the scope of their employment when helping White load and reload his trailer.

Furthermore, the fact that Walker Builders was under no contractual obligation to assist White in the loading or reloading of the pipes is irrelevant.   Walker Builders' voluntary acts imposed upon its employees a duty to exercise such care as

12

reasonably prudent persons would have exercised under the same or similar circumstances. *See generally* 2 Alabama Pattern Jury Instructions — Civil §§ 28.17, 28.17(a) (2d ed. 1993). Given Walker Builders' knowledge of the accident on the date it occurred, Hanover also should have been informed on that date or shortly thereafter. Such notification would have permitted Hanover to conduct its own independent investigation of the facts long before Crider filed her complaint.

As suggested by counsel for Walker Builders, however, the Alabama Supreme Court's decision in *C.I.E. Service Corporation v. Smith*, 460 So. 2d 1244 (Ala. 1984), precludes this court from granting summary judgment with respect to the issue of notice. In that case, the court affirmed a trial court's finding of <u>fact</u> that an insured's giving of notice was reasonable. *See id.* at 1246.

The insured, a security service that guarded an apartment complex, waited more than a year to notify its insurer of a claim. The claim involved a charge of negligence in connection with a rape that occurred in an apartment complex. The plaintiff in the underlying action alleged that negligent performance of duties by the apartment's security service was the proximate cause of the rape. Just as in this case, the insured did not notify the insurer

13

until it was served with a complaint by the rape victim, which was

more than a year after the rape occurred. Under those facts, the

Alabama Supreme Court held the notice afforded by the insured was

reasonable:

> Of course, we do not hold that an insured, in a case
> involving an intentional criminal act committed by a
> third person, [9] is automatically excused from giving
> notice to the insurer until a suit is filed. <u>For
> example, if the victim of the crime here had told the
> security service that she was considering filing a claim
> against it, or if the security service knew that a
> lawsuit was being contemplated, then, under those
> circumstances, it might have been unreasonable for the
> insured to await the filing of the suit to notify its
> carrier.</u> [10] ... *Under the facts of this case*, we hold
> that the trial judge did not err in finding that the
> insured gave reasonable notice to its insurer.

*Id.* at 1247 (emphasis supplied, other than italics). In dissent,

Justice Shores argued that the notice provided was unreasonable,

because "the very activity being performed and that to which the

insurance related, *i.e.*, providing security to the apartment

complex, was breached, and the incident arose directly out of that

---

9 The element of third-party criminal activity (White's operation of a
motor vehicle under the influence of alcohol) also may be present in this case.

10 *See, e.g., Phoenix Assurance Company of New York v. Harry Harless
Company*, 414 F.2d 794, 795 (5th Cir. 1969) (insured, who serviced fire
extinguishers that "might have failed," thereby contributing to damages resulting
from a fire, was unreasonable in delaying notification to insurer); *Southern
Guaranty Insurance Company*, 334 So. 2d at 881, (insured, who received a letter
from an attorney indicating that "he intended to proceed with the case to recover
damages for the injuries sustained ... in the accident [allegedly caused by the
insured]," was unreasonable in delaying notification to insurer).

14

activity, it is unreasonable to assume that no claim would be likely." *Id.* at 1248.

While this court agrees with the argument advanced by Justice Shores in dissent, it is bound to follow the majority opinion in *Smith*, given the similarity in facts between that case and the one before this court. Thus, summary judgment is due to be denied on the issue of notice.

**B. "Products — completed operations hazard" Exclusion**

Hanover alternatively points to an exclusion from policy coverage as an independent basis for granting summary judgment. As part of the policy, Hanover and Walker Builders created an endorsement to the following effect: "This [commercial general liability] insurance does not apply to 'bodily injury' or 'property damage' included within the 'products — completed operations hazard'." (emphasis supplied.) Thus, coverage is excluded for "bodily injury"[11] or "property damage" resulting from certain "completed operations." The term "Products — completed operations hazard" is defined in Section V.14 of the policy.

> **14.a.** "Products — completed operations hazard" includes
> all "bodily injury" and "property damage" occurring
> away from premises you own or rent and arising out

---

[11] "Bodily injury" is "injury, sickness or disease sustained by a person, including death resulting from any of these at any time." Complaint at Exhibit B, page 7.

15

of "your product" or "your work" except:

(1)  Products that are still in your physical
     possession; or

(2)  Work that has not yet been completed or
     abandoned.

b. "Your work" will be deemed completed at the earliest
   of the following times:

(1)  When all of the work called for in your
     contract has been completed.

(2)  When all of the work to be done at the site has
     been completed if your contract calls for work
     at more than one site.

(3)  When that part of the work done at a job site
     has been put to its intended use by any person
     or organization other than another contractor
     or subcontractor working on the same project.

Work that may need service, maintenance, correction,
repair or replacement, but which is otherwise
complete, will be treated as completed.

c. This hazard does not include "bodily injury" or
   "property damage" arising out of:

(1)  The transportation of property, unless the
     injury or damage arises out of a condition in
     or on a vehicle created by the "loading or
     unloading" [12] of it;

(2)  The existence of tools, uninstalled equipment
     or abandoned or unused materials; or

---

[12] In relevant part, "loading or unloading" is "the handling of property:
... [a]fter it is moved from the place where it is accepted for movement into or
onto an ... 'auto'; [or] [w]hile it is in or on an ... 'auto'; or ... [w]hile it
is being moved from an ... 'auto' to the place where it is finally delivered."
Id. at 8.

16

> (3)  Products or operations for which the
>      classification in this Coverage Part or in our
>      manual of rules includes products or
>      uncompleted operations. [13]

The court interprets this intricate clause as follows: The
endorsement excludes from coverage "bodily injury" included within
the "Products — completed operations hazard." That term generally
includes "bodily injury" that occurs away from Walker Builders'
premises.

An exception to the definition of "Products — completed
operations hazard" involves work that has not been completed or
products that are still in Walker Builders' possession. Another
exception involves "'bodily injury' ... arising out of [t]he
transportation of property." This court assumes that
"transportation of property" involves transportation by the
insured. An exception to that exception (*i.e.*, a situation that
falls within the ambit of the term "Products — completed
operations hazard," and is thereby excluded from coverage) concerns
"bodily injury" that "arises out of a condition in or on a vehicle
created by the 'loading or unloading' of it ...."

Hanover concludes that the allegations in Crider's complaint
fall squarely within the "Products — completed operations hazard"

---

[13] *Id.* at 9 (emphasis supplied).

17

exclusion. It emphasizes that all bodily injury occurred away from the Walker Builders facility, long after Walker Builders' work had been completed and its products were in White's possession. Walker Builders, on the other hand, argues that this exclusion does not apply in the context of its sale of pipes to White. Rather, it contends the "Products — completed operations hazard" exclusion only applies in situations where an insured's work is done at a job site away from the central place of business. If the exclusion does in fact apply, Walker Builders argues that the "transportation of property" exception to the exclusion established in Section V.14.c applies, thus bringing Crider's claim within the scope of coverage.

The Alabama Supreme Court recently noted in *State Farm Fire & Casualty Company v. Slade*, Nos. 1961769 & 1961770, 1999 WL 667291 (Ala. Aug. 27, 1999), that "the terms of an insurance policy should be given a rational and practical construction." *Id.* at *13. "[A] court cannot consider the language in an insurance policy in isolation, but must consider the policy as a whole." *Id.*

Upon consideration of the authorities submitted by both parties, this court finds that Hanover's argument carries the day. While the intricacies of the "Products — completed operations

18

hazard" exclusion are remarkable, the intent behind that exclusion
is unmistakably clear: to exclude from coverage all bodily injury
occurring away from Walker Builders' premises with respect to
completed work.  Walker Builders is correct in its assertion that
this exclusion typically applies to contractors working on a job
site.  *See American Cast Iron Pipe Company v. Commerce & Industry
Insurance Company,* 481 So. 2d 892, 894 (Ala. 1985) ("'Completed
operations' is a term referring to the liability of a business
entity, generally a contractor, which arises after he has completed
his work and after the subject matter has been accepted by a third
party.").  Nonetheless, other binding precedent compels this court
to find that Hanover's liability coverage does not extend to the
claims alleged by Crider.

The former Fifth Circuit's decision in *Ketona Chemical
Corporation v. Globe Indemnity Company,* 404 F.2d 181 (5th Cir.
1968), is applicable here.[14]  Sitting in diversity, the court
applied Alabama law to construe the scope of a completed operations
exclusion, drafted similarly to the one at issue here.  *See id.* at
184-85.  It found the exclusion applicable to all claims brought

---

[14] In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

19

against the insured in an underlying state court action,[15] and thus

concluded that the insurer had no duty to defend or indemnify.

Among other claims, the plaintiff in the underlying state court   .

action alleged that the insured

> "was negligent in allowing a car 'that was not reasonably
> safe for reasonable use for the plaintiff' to be loaded
> with chemicals and furnished to plaintiff's employer for
> use by the plaintiff 'while in such unsafe condition for
> reasonable use'."

*Id.* at 183 (quoting from appellant's brief). That claim is very

similar to Count III of Crider's complaint in the underlying action

here. The court wasted little time in applying the completed

operations exclusion:

> Rather, it excludes liability for loss from accidents
> caused by certain hazards, namely dangers lurking in
> products and completed operations, and only when they
> occur away from the premises of the insured.

---

[15] The facts leading to the filing of suit in state court were as follows:

On January 1, 1961, employees at the Ketona [insured] premises loaded a tank car with a quantity of anhydrous ammonia solution for shipment to a purchaser, Home Guano Company, to be used in the manufacture of fertilizer. The tank car was subleased to Home Guano, and, upon arrival at its plant in Dothan, Alabama, the car was located on a sidetrack and used as a storage receptacle. The Chemical was unloaded from it, as needed, by means of pipes attached to valves in the dome of the car. On January 26, 1961, after the chemical had been unloaded and the pipes removed, Raymond Strickland [plaintiff in the underlying suit], and employee of Home Guano, climbed on top of the car to remove a bushing which remained in the valve outlet. In attempting to unscrew the bushing the employee's hand struck the valve handle, causing the valve to open. Pressurized residual fumes spewed out into his face, severely injuring him and causing permanent blindness.

*Ketona Chemical Corporation*, 404 F.2d at 182-83.

20

. . .

   The accident here was the striking of the valve
lever and the consequent release of chemical into the
face of Strickland. <u>Whether liability for the loss is
covered by the policy must be determined by looking to
the claim in the damage suit against the insured.</u> ...
<u>[The operation] had been completed when the accident
occurred away from the premises, and out of it the
accident arose</u>.

. . .

There is no ambiguity in this instance, and the Court has
no alternative but to enforce the policy terms.
Liability is clearly excluded by the completed operations
aspect of the Products Hazard exclusion.

*Id*. at 185-86 (emphasis supplied). *See also Heinrich v. Globe
Indemnity Company*, 164 So. 2d 709, 712 (Ala. 1964) (concluding that

insurer has no obligation to defend or indemnify its insured in an

underlying action alleging negligent loading of lumber by the

insured, because "[i]t can scarcely be denied that the accident

occurred during the unloading of an automobile, as defined in the

policy, and 'away from premises owned by, rented to or controlled

by the named insured ... or the ways immediately adjoining.'").

   These authorities confirm that the "Products — completed

operations hazard" exclusion applies to all injury occurring away

from Walker Builders' premises.    Walker Builders' alleged

negligence in selling the pipes to White is not sufficient to bring

Walker Builders' conduct within the ambit of policy coverage.

Because the actual injury forming the basis of Crider's suit for wrongful death occurred away from Walker Builders' premises, the text of the "Products — completed operations hazard" exclusion is dispositive. *See generally* Bibb Allen, *Alabama Liability Insurance Handbook* § 10-7, at 238-41 (1996 & Cum. Supp. 1999) (collecting cases and noting that "[t]he damage must occur away from the premises for the exclusion to apply" and that "[t]he operations must be completed") (emphasis supplied). Neither of the exceptions to that exclusion are applicable here: The work was completed at the time of the accident, White transported the pipes, and any claim relating to transportation falls victim to the "loading or unloading" condition within the exclusion. Summary judgment, therefore, is due to be granted to Hanover. It has no duty to defend or indemnify Walker Builders against Crider's claims, based on the application of the "Products — completed operations hazard" exclusion.

## IV. MOTION FOR STAY

Hanover's motion for stay is due to be denied as moot, given the court's findings with respect to its motion for summary judgment.

## V. CONCLUSION

For the foregoing reasons, this court finds that Hanover's

22

motion for summary judgment is due to be granted.  It has no duty
to defend or indemnify Walker Builders against the claims alleged
in the underlying state court lawsuit.  Further, Hanover's motion
for stay is due to be denied as moot.  An order consistent with
this  memorandum  opinion  shall  be  entered  contemporaneously
herewith.

DONE this __7th__ day of February, 2000.

United States District Judge

23